# DAVID WILSON

*v.*

# MUNICIPALITY OF ARECIBO.

Mayaguez, No. 175.

1. A city which so constructs its sewerage system as to be a nuisance to the owners of property adjoining the outlet of the sewers may be compelled to pay the damages occasioned thereby.
2. Such damages are the difference between the value of the property before and after the creation of the nuisance.

Opinion filed September 23, 1908.

Mr. *F. L. Cornwell* and Mr. *L. Feliu,* attorneys for the complainant.

Mr. *F. H. Dexter,* attorney for the respondent.

NOTE.—*Municipal corporation; drains and sewers.*—The authorities dealing with the duty and liability of municipality with respect to drainage are gathered in a note to Georgetown v. Com. 61 L.R.A. 673.

RODEY, Judge, delivered the following opinion:

This is a bill against the municipality of Arecibo, alleging that it maintains a nuisance to the special injury and damage of the complainant. The cause has been pending for about two and a half years, during which time a good deal of pleading was indulged in and many issues of law raised and settled. Opinions and rulings in the cause will be found in 2 Porto Rico Fed. Rep. 278, 3 Porto Rico Fed. Rep. 32 and 248. In the first of these opinions, practically all of the law regarding the case is settled. Thereafter, a large amount of oral testimony was taken before the court itself at Mayaguez and before an examiner at Arecibo. Many exhibits, consisting of certificates from municipal and other officials, as well as many photographs showing the locus in question, were introduced.

After this, both parties appearing to appreciate that such was proper under the law as settled in the court's opinion aforesaid, stipulated that the only question remaining to be passed upon is as to whether or not complainant has in fact sustained special damage by reason of the construction of a sewer system by the respondent municipality, and the discharge of sewage into the Santiago river, in front of complainant's premises, as described in his bill. It is further provided in this stipulation that if the court shall find that complainant has so in fact been damaged, a decree or judgment therefor may be entered instead of granting an injunction in the premises.

The town of Arecibo is built upon a ridge of ground or sand that rises abruptly from the open roadstead or bay of the Atlantic ocean, to a height of perhaps 15 or 20 feet. This ridge runs parallel with the ocean, and in direction is nearly east and west.

Wilson v. Arecibo.

The ridge almost immediately slopes inland for several hundred yards, and finally, at its foot, where the river is situated, it is almost on a level with the sea, so that the drop from the river, which encircles the town at the rear, and enters the ocean at the eastern side thereof, to the sea, is very little. In consequence of this, the current of the river where it thus encircles the town and enters the ocean is extremely sluggish, and pulsates slowly with the rising and falling of the tides, which, as it is said, are not high on the shore in question. This, of course, results in the current of this little river responding to all the tides and tidal waves, and in the backing up of the river water several times each twenty-four hours.

It appeared in evidence that, for some years previous to the year 1903, the respondent municipality had at least one sewer emptying into the river in question, but that it so emptied several hundred feet above the premises of complainant, and drained or sewered but a relatively small portion of the town. It further appeared that in said year 1903, the respondent municipality constructed a partial, but relatively extensive, additional system of sewers, and, including what it had before, emptied not less than seven of such sewer pipes or drains of varying diameters into the river in question, opposite and to the right and left of complainant's premises. It further appeared that, at the time this additional sewer system was about to be constructed, complainant, by himself and his wife, made vigorous protest against the same to the municipal authorities at Arecibo and to the insular authorities at San Juan, and, in addition, secured a protest to be signed to the former, and probably also to the latter, by about one hundred and fifty residents of the lower part of the town, which, it was claimed, would be particularly injured by the deposit of this sewage in the river.

Complainant claims that a very large portion of the town could be sewered northward directly into the sea, through one main sewer or several smaller ones, which could be so arranged as to be wholly sanitary, and that this could be done by digging through this sand ridge, at a relatively slight expense; and further contends that it was not only wrong, but almost criminally so, to empty these sewers into this low, flat, sluggish little river that encircled the town on the south and east, and thus made it possible for the prevailing easterly or trade winds to carry the foul air continuously all over the whole city.

The Santiago river is a small stream which, in its normal condition, is not more than 30 to 40 feet wide. Complainant's property consists of a two-story dwelling house and a one-story blacksmith shop adjoining. It has a frontage northward on Tanama street of about 75 feet, and runs back about 100 feet to the shores of a slough called the Caño Perdomo. This slough enters the river two or three hundred feet east or northeast of complainant's property, so that his property is situated on the narrow peninsula made by these two bodies of water. The river is across the street and about 75 feet in front of complainant's property, while the caño adjoins the same in the rear. The caño is a swampy slough, and of about the same size as the river, and responds in the same way to the rising and falling of the ocean tide, but has no regular current through it.

Complainant alleged in his bill, and introduced a lot of proof to sustain the same, that, previous to the building of this sewer system, the river and the caño were not particularly offensive; but that, immediately after the same was constructed, the water in the river and the caño became polluted to such an extent as that it drove out all fish, and the sewage, thus entering the slug-

Wilson v. Arecibo.

gish current, remained on the surface thereof, and, with the rising and falling of the floods of the river and of the tides of the ocean, was deposited along the shores of the river and the caño in large quantities, and that, as a result, the water and air were so polluted as to render his premises uninhabitable, and his family became sick, and one member thereof died, presumably in consequence thereof, and that eventually he was obliged to provide another residence out in the country, at his cane plantation, at a cost of $4,000. However, he admitted that a large part of this expense was incurred in preparing the new residence. He further testified that the property in question was. worth about fifteen or twenty thousand dollars, and that it has. been wholly ruined and lost to him by reason of the acts of the respondent.

Further, complainant introduced considerable expert medical and other evidence to show the unhealthy effect the construction of this system of sewers had upon his property and upon the sanitary condition of the section of the town where the same is located. It further appeared that complainant purchased the property in question as long ago as 1863, and from time to time. improved the same to its present condition; that the one-story building is built of cement, and is used as a blacksmith shop,. which is still occupied as such, and that, as to the other portion, the lower story, also of cement, is used for a warehouse for carriages, etc., and the upper part, which is of wood, was used as a residence until he and his family were forced to move away,. as stated.

On the other hand, the respondent municipality introduced a very large amount of evidence tending to. show that the river has a reasonable amount of current which effectually carries off

Wilson v. Arecibo.

the sewage, and that the unhealthiness of the river and caño has not been increased by the construction of the sewer system. Further, that previous to the building of this additional system of sewers, the river was contaminated somewhat by the drainage from several distilleries and sugar plants located up stream from complainant's residence, some of which plants complainant himself was the owner of, and that hence he has not in fact been damaged. The evidence of respondent further attempts to show that the locality in question is not more unhealthy than the rest of the town, and that many respectable and somewhat wealthy people who could well afford to move away have continued to live in that same vicinity, and are not at all troubled by any alleged unhealthiness or malaria.

The municipality also introduced considerable evidence showing that complainant could rent this property even now if he chose, at about the same rental that other similar property in that vicinity commands, and that it could be sold, and that offers have been made for it up to about the sum of $3,500, and that the property in fact is not now, and never has been, worth more than that, or certainly not to exceed $5,000.

We have read all the evidence with care. We find that portion of it taken before the examiner to be largely cumulative, and would have excluded it on that ground had it been taken before the court direct. We have also examined all of the maps, charts, photographs, certificates, and other exhibits in detail, and feel that we have the evidence well in mind. The proofs are conflicting as to whether or not the deaths of several persons, which occurred in that vicinity, can be attributed to the unsanitary condition alleged in the bill or to other causes. The oral testimony as to whether or not the river and caño are in fact

Wilson v. Arecibo.

polluted by the sewage, and as to several other points in the case, is in irreconcilable conflict. In order to satisfy ourselves as best we could, we recently made a trip alone to the municipality in question, and then, with all of the testimony fresh in our mind, examined the locality and the premises of the complainant without aid or assistance from any person. We also drove around the town and along the beach and examined the outlet of the river to the sea, as well as the general lay of the town and the construction of the sewer system. It is no part of the court's duty on this issue to comment upon the general unsanitary condition of the respondent municipality. Let it be sufficient to say that it is plainly manifest to anyone.

From all the evidence and this examination, we have no hesitation in holding that complainant has fully sustained the material allegations of his bill as to the facts. After having seen the locality, and viewed the mass of tumble-down, inhabited shacks, and the filthy condition of the shores of the river and the caño to the right and left of complainant's property, we cannot imagine how people of the evident sensibilities of complainant and his family could ever have resided with any comfort there at any time. The residences of other persons of refinement in that same vicinity are not, in most of the instances, located in quite as bad a position as that of complainant, and, even if they were, we do not think that fact should oblige any other person to endure an aggravation of the conditions through the negligence of the municipality. We are satisfied, from all of the record and the evidence in the case, as well as from this personal examination, and we so find, that the river and caño are contaminated by this sewer system, and befouled to an unendurable and dangerous degree, and which is, in our opinion, wholly un-

Wilson v. Arecibo.

necessary, and attributable entirely to slipshod and careless municipal management, and to the improper construction of the sewer system. It is not always wisdom for a municipality to hamper city engineers with a too rigid limit as to expense. A workable sewer system is not necessarily a sanitary one. It would not be profitable for us to further describe the filthy condition of this stream and caño and their shores. They are simply vile.

We therefore find and hold that the respondent municipality maintains a nuisance, as alleged in the bill of complaint, from which complainant has suffered special damage. However, on the proofs we fail to agree with complainant's contention that his property is now, or ever was, worth any such sum of money as $15,000. Even if it ever was intrinsically worth any such sum, which we deny, the surroundings are, and evidently have been, such for years, entirely independent of the river and caño, as to make it decidedly undesirable as a place of residence for anyone. It is our opinion, based on the evidence as here stated, that $5,000 is a reasonable value for the property. We also are of opinion, and we so find, that the property in question could even now be sold in the market for as much as $3,500. And hence we hold and find that complainant has, under all the circumstances of the case, by reason of the maintaining of this nuisance by the municipality, been damaged in the sum of $1,500, and we therefore find and hold that he is entitled to recover said sum, together with all costs and the examiner's fee and $7.66 spent by the court for the trip it made to the locality. We feel that this latter sum ought to be returned to the island in this way. A decree or judgment, whichever may be proper, or both, will therefore be prepared and entered in favor of the complainant for the total of these amounts.

Wilson v. Arecibo.

It is not without regret that we arrive at these conclusions, but we feel that the law and the facts force us to it. Lessons in self-government under our system have to be learned by experience; and, as time passes, the people will come to understand that municipal officers, as well as all other government officials, owe a duty to the people and the public that cannot be neglected, and that they cannot virtually confiscate private property by maintaining a nuisance, any more than a private individual could do so, without suffering the consequences.